UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MATTHEW BAKER, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | Cause No. 1:22-CV-01249-RP-DH |
| | § | |
| BRYAN COLLIER, et al., | § | |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS MOTION TO TRANSFER VENUE

TO THE HONORABLE COURT:

NOW COMES, the Undersigned Plaintiffs, acting Pro Se in the above styled and numbered cause and respectfully file Plaintiffs' Response to Defendants Motion To Transfer Venue. Plaintiffs pray that this Court DENY said Motion (Doc. 20) and hold that the Western District of Texas, Austin Division is the appropriate and most convenient venue for this suit. In support thereof, Plaintiffs show the following:

### I.
### THE HOT POTATO

This suit has already been transfered twice - First from the Southern District of Texas, Houston Division, to the Northern District of Texas, Abilene Division.

The Abilene Division subsequently transfered the suit to the Western District of Texas, Austin Division.

Now Defendants want this Court to play the game of hot potato and send the suit back to Abilene Division after the Hon. Sam Cummings determined that the Austin Division is the appropriate and most convenient venue.

Plaintiffs assert that the Austin Division is the appropriate and most convenient venue pursuant to 28 U.S.C. 1391(2) and 1404(a). Plaintiffs respectfully request that this Court deny Defendants Motion to Transfer Venue.

### II.
### NO "GOOD CAUSE" FOR RECONSIDERATION

Defendants claim that there is "good cause" to bring their motion to reconsider based upon the Abilene Court "relying on Plaintiffs' incorrect and conclusory allegations" (Doc. 20, pg. 12) concerning the residency of

-1-

Defendants, the location of Board Meetings, and the promulgation of heat mitigation policy.

Plaintiffs will establish in this response that their Advisory (Doc. 9) to the Abilene Court did NOT contain incorrect or conclusory allegations. As such, Defendants fail to show "good cause" to support the reconsideration of venue.

III.
DEFENDANTS RESIDENCE
28 U.S.C. 1391(b)(1)

Defendants rationale for transferring this suit back to Abilene is premised upon the fact Plaintiffs are currently assigned to the Robertson Unit and "reside" in Abilene (Doc. 20, pg. 6).

The correct venue in civil right cases is controlled by the general venue statute, 28 U.S.C. 1391(b), which sets out three venue possibilities:

1) one based on the defendants residence;
2) one based on the location of the operative events or omissions; and,
3) one a fallback provision.

Under 1391(b)(1), a civil action governed by the general statute may be brought in a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located.

The Plaintiffs residence, on the other hand, is NOT relevant to venue under this statute.

Therefore, the Defendants argument that this suit should be transferred back to Abilene because it is the Plaintiffs residence has no foundation under 28 U.S.C. 1391(b)(1).

A. <u>TBCJ RESIDES IN AUSTIN</u>

In Plaintiffs Advisory (Doc. 9) they state that they "believe that the more appropriate venue may be the Western District of Texas, Austin Division, because that is where the majority of the Defendants reside (To wit: members of the Texas Board of Criminal Justice) and where the actual events giving rise to the alleged civil rights violations occurred".

Plaintiffs go on to explain that this "is because it is the POLICY created by the Defendants in Austin that does not require that all TDCJ units maintain a heat index between 65°-85°F inside all TDCJ unit's housing and work areas. It is this policy that creates the cruel and unusual conditions that Plaintiffs raise in this suit" (Doc. 9, pg. 1).

Defendants argue that "unlike Plaintiffs in their advisory on venue, most of the Defendants do not live in Austin, Texas... In fact, more Board Members reside in the Northern District of Texas than the Western District of Texas... Nor do the Board members predominantly work in their official capacities in Austin as alleged in Plaintiffs' advisory... Therefore, Plaintiffs are incorrect in asserting that any policy or work promulgated by the Board Members would per se occur in Austin. Instead, there is no certainty that the Board would promulgate policy in Austin" (Doc. 20, pg. 6-7).

This argument is disingenuous.

The "residence" of a public official sued in their official capacity is the place where they perform their official duties. See, Butterworth v. Hill, 114 U.S. 128, 132 (1885); Florida Nursing Home Ass'n v. Page, 616 F.2d 1355, 1360 (5th Cir. 1980); 17 Moore's Federal Practice - Civil §110.03.

Pursuant to Tex. Gov. Code 492.014(a) the TBCJ "shall maintain headquarters in Austin". For all practical purposes, this renders Austin the "residence" of the TBCJ.
This contention is further supported by Tex. Gov. Code 492.010(a) which states that when the TBCJ files suit "the venue of a suit authorized by this section is in Travis County" - To wit: Austin.

Furthermore, in practice, the proposition presented by Defendants is both unworkable and unsafe. To file a suit against the TBCJ, a prisoner should not need to hunt down the personal address of each board member in order to determine the correct venue. This is not something this Court should condone. Plaintiffs find it outrageous and irresponsible for Defendants to even suggest such a proposition.

Therefore, for all practical purposes, the personal residence of the individual board members is irrelevant to determine the residence of the TBCJ - which pursuant to statute - is in Austin.

-3-

B. ABILENE IS NOT CONVENIENT

Defendants argue that "the case is more convenient in Abilene because the Plaintiffs reside there thus minimizing safety and logistical concerns" (Doc. 20, pg. 6).

Defendants expressed concern for logistics and safety is unfounded in light of the mandates of 42 U.S.C. 1997e(f)(1).

i. SAFETY AND LOGISTIC CONCERNS

Defendants attempt to argue that: "If this Court retained Plaintiffs' claims, TDCJ would have to transport Plaintiffs about 225 miles to the federal courthouse in Austin for live hearings. This poses safety and logistical issues due to the number and the violent nature of Plaintiffs... Obviously, to transfer violent inmates hundreds of miles to attend in-person court hearings would pull needed transportation officers away from their other duties. It would also deprive the Robertson Unit of officers when Plaintiffs allege that the prison is already understaffed. Therefore, the greater inconvenience to Defendants and their respective agency under §1404(a) includes the potential safety and logistical issues in transporting Plaintiffs to Austin for live hearings and trial rather than where Defendants reside/work" (Doc. 20, pg. 8).

This argument fails for the simple fact that 42 U.S.C. 1997e(f)(1) negates the need to transport Plaintiffs to any courthouse for an evidentiary hearing. 1997e(f)(1) states:

> To the extent practicable, in any action brought with respect to prison conditions in Federal court pursuant to Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial prceedings in which the prisoner's participation is required or permitted **SHALL be conducted by telephone, video conference, or other tele communications technology without removing the prisoner from the facility in which the prisoner is confined.**

Since it is statutorily mandated that Plaintiffs attend pretrial hearings via tele communication means, there is no need for the suit to be in Abilene to facilitate easy transportation to the courthouse.

ii. VIDEO-TELECONFERENCE

To counter Plaintiffs initial assertion that they would attend all hearings by teleconference, the Defendants argue that this too creates safety and logistical issues.

First, Defendants boldly allege that "Plaintiffs fail to provide any evidence but their conclusory allegations that the Robertson Unit has zoom capabilities"

As this Court may be familiar, the majority (if not all) TDCJ facilities have access to video conference for pretrial hearings. This is, afterall, the 21st century. ATC-170 (Rev. 1) is the TDCJ's policy concerning Access To Courts, Counsel and Public Officials via Telephonic and Video Teleconference Hearings. ATC-170 states:

> In accordance with statutory law and Board Policy 03.81, a judge may order a hearing to be conducted via telephone or video tele-conference (VTC) rather than bench warrant an offender. For an offender to participate in a telephone or video teleconference hearing, the TDCJ shall require the judge to send a court order or a letter signed by the judge, on official letterhead, preferably three weeks in advance of the requested hearing. The order shall contain the offender's name, TDCJ number, date of requested hearing, beginning time, estimated ending time, the name and telephone number of the court's contact person, and a collect telephone number where the call can be facilited in the case of a tele-conference. No collect telephone number need be provided if the court initiates the telephone call. Questions concerning the coordination of a telephone or video teleconference hearings should be directed to the TDCJ - Access to Courts - Central Office in Huntsville, Texas at **936-437-5390**.

This policy confirms that Robertson Unit has video teleconference capabilities. If Defendants have any real concern about this, Plaintiffs encourage them to contact the TDCJ Access To Courts at the number above. Alternatively, a fax may be sent to 936-294-0626.

iii. VIOLENT NATURE

Not only do Defendants have a mischaracterization of the so-called "violent nature" of Plaintiffs convictions, Defendants also mischaracterize the actual security concerns posed by Plaintiffs.

For example, Defendants states that "it is unknown whether the ten Plaintiffs would be allowed in the law library at one time due to safety concerns of congregating ten inmates in an area capable for the Plaintiffs to appear on a zoom hearing" (Doc. 20, pg. 8) and that "Plaintiffs have not

sufficiently supported that the Robertson Unit could separate each Plaintiff and provide simultaneous access to a video or teleconference system if they cannot meet in one location" (Doc. 20, pg. 9).

Plaintiffs find this argument laughable - Hannibal Lector is not a Plaintiff in this suit. Although Robertson Unit is a maximum-security prison, it does not mean all the residents must be isolated from one another so that they do not lash out violently. All the Plaintiffs are G3 custody level and most are housed in the same two wings.

G3 custody level is "General Population level 3". According to the TDCJ Offender Handbook "G3 refers to prison offenders who may live in dorms or cells inside the main building of the unit". As General Population there is no restriction in accessing the Unit law Library and Plaintiffs have the "opportunity for 10 hours of access per week" (pg. 123 - Offender Orientation Handbook, Feb. 2017 [I-202]).

Furthermore, logic dictates that if Plaintiffs could not safely meet, how would they be able to sign and file the pleadings already filed in this sui? Defendants asserted security concerns are unfounded.

iv. <u>UNRULY PRO SE LITIGANTS</u>

Lastly on this matter, Defendants assert that "even if telephonic or zoom access is simultaneously available for each Plaintiff, given the number of pro se plaintiffs fighting for their perceived constitutional rights, the Court may expect multiple parties speaking over one another, further drawing out the hearing and court process" (Doc. 20, pg. 9)

Again the Defendants mischaracterize the nature of Plaintiffs as an unruly bunch of Pro Se litigants. Nothing supports the Defendants bold assertion that multiple parties will speak over one another at a video teleconference.

Plaintiffs all understand the magnitude of the litigation they have initiated and that Texas has adamantly contested the need for heat index restrictions or air conditioning. But this is a life and death issue and Plaintiffs have an invested interest in coherent and professional pretrial hearings. This is especially so since Plaintiffs fully expect the state's

stategy to be the confusion of the issues being litigated, and Plaintiffs want to avoid such confusion. Thus Plaintiffs have agreed amongst themselves that they intend to designate one Plaintiff (Matthew Baker) to speak on behalf of the Plaintiffs during pretrial hearings in order to avoid such unruly pro se litigation. Again, Defendants concerns are unfounded.

v. <u>CONVENIENCE OF WITNESSES</u>

Defendants make the argument that an Abilene venue would be more convenient to witnesses, and that "attempting to coordinate fact witnesses during trial who may live far distances away, places significant burdens on the witnesses themselves... Therefore, for Robertson Unit witnesses to testify in Austin, the drive would pull them roughly four hours away from not only their jobs, but their homes/families. These costs and additional burdens on potential witnesses favor the Northern District of Texas, Abilene Division, which lies just over 12 miles away from where the Plaintiffs are incarcerated" (Doc. 20, pg. 11).

This argument is not convincing. Firstly, as explained before, the operative events or omissions giving rise to this suit do NOT originate from the Robertson Unit. Therefore, at this stage in the litigation, Plaintiffs do not foresee who these "Robertson Unit witnesses" may be or what potential testimony they may provide.

To meet the burden of demonstrating that transfer is in the convenience of the witnesses, the party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony. Absent such a showing, the motion should be denied. <u>Pilates, Inc. v. Pilates Institute, Inc.</u>, 891 F.Supp. 175, 183 (S.D.N.Y. 1995).

Defendants fail to do this.

Secondly, besides expert witnesses (whom convenience of venue is given little weight), party witnesses are the most likely witnesses in this suit.

Party witnesses and those closely aligned with a party, such as employees, are presumed to be willing to testify in either forum despite the inconvenience that one of the forums entail. See, <u>Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.</u>, 844 F.Supp. 1163, 1166 (S.D.Tex 1994); 17 Moore's Federal Practice - Civil §111.13.

Accordingly, unwilling non-party witnesses are given more weight in the transfer analysis than the party witnesses and their employees. See, State Street Capital Corp v. Dente, 855 F.Supp. 192, 197 (S.D.Tex. 1994).

However, to the detriment of Defendants arguments, Defendants do not identify any unwilling non-party witnesses that are not amenable to process in either district, and as such they should not be given any weight in the transfer analysis. Aquatic Amusement Associates, Ltd v. Walt Disney World Co., 734 F.Supp. 54, 58 (N.D.N.Y. 1990).

IV.
OPERATIVE EVENTS OR OMISSIONS
28 U.S.C. 1391(b)(2)

Defendants also argue that Abilene is the correct venue because "the alleged events or omissions giving rise to Plaintiffs' claims occurred there" (Doc. 20, pg. 6). This argument is clearly predicated upon 28 U.S.C. 1391(b)(2).

The statutory language of 1391(b)(2) requires the Court to determine the locus of any substantial part of the event or omissions on which the claim is based.

"Substantiality", for this purpose, is more a qualitive than a quantitative inquiry. Courts measure it by assessing the overall nature of the plaintiff's claim and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.

Generally, however, the Courts focus on activities of the defendant, not the plaintiff.

The operative events or omissions in this suit do NOT originate from the Robertson Unit, Abilene. In fact, the issue is systemic and effects 70 TDCJ units without air conditioning.

As is clear from the Original Complaint, this suit challenges the policy and practice of exposing TDCJ residents to extreme heat conditions in their housing and work areas in violation of the Eighth Amendment.

This policy and practice was not created by any official on the Robertson Unit. Hence the reason that no officer or official from the Robertson Unit is named in this suit. They are powerless to change the excessive heat conditions beyond applying the mitigation policy that Plaintiffs assert is ineffective, inadequate and even unsafe.

Defendants make the argument that "TDCJ administration promulgates and supervises the enactment of policy related to heat mitigation, not the Board... The Board has delegated the authority for daily management of TDCJ to the Executive Director, and none of the Adminstrative Directive reviews required by BP-01.01 include matters of heat mitigation... Additionally, TDCJ has promulgated an administrative rule directing the creation of the Correctional Institutions Division with the 'operational responsibility for providing safe and appropriate confinement' for Texas felony inmates... Therefore, the Board does not promulgate heat mitigation policy. Regardless of who promulgated heat mitigation policy, Plaintiffs fail to provide any support for the conclusory assertion that the Board created the policy in Austin" (Doc. 20, pg. 14-15).

Plaintiffs strongly assert, irrespective to the above argument, that TBCJ has ultimate policymaking responsibility as per statute and this constitutes the locus of the substantial part of the events or omissions that cause or allow the systemic excessive heat conditions challenged in this suit.

Tex. Gov. Code 492.001 states simply: "The board governs the department". In other words, the TBCJ governs the TDCJ. Therefore, there is absolutely nothing that prevents the TBCJ from taking the necessary action or creating written policy to prevent the excessive heat conditions that violate the Eighth Amendment rights of TDCJ residents on 70 units.

Furthermore, Tex. Gov. Code 492.013 describes the general powers and duties of the TBCJ. Subsection (e) states: "The board shall develop and implement policies that clearly separate the **policymaking responsibilities of the board** and the **management responsibilities of the executive director** and the staff of the department".

In other words, TBCJ has the statutory policymaking responsibilities and the executive director only has the management responsibilities - and such SHALL be clearly separate. This seems to contradict the Defendants argument.

Either way, none of the policymaking responsibilities are executed in Abilene. Therefore, the only logical conclusion is that the locus of the claims are based in Austin - where the TBCJ has its statutory policymaking responsibilities and where the overall nature of the Plaintiffs claims arise.

A. NARROWLY DRAWN RELIEF

Although it is questionable as to how this relates to venue, the Defendants argue that Plaintiffs "would likely fail in having a court order any unit to stay within a mandated temperature range as requested" (Doc. 20, pg. 10) because the "Fifth Circuit has expressly ruled that fans, ice water, and daily showers are effective techniques to mitigate heat temperatures and lead to no violation of the Eighth Amendment if properly available". (Doc. 20, pg. 10).

A significant portion of the Original Complaint is dedicated to setting out facts to establish why fans, ice water, daily showers etc are NOT adequate remedial measures to cure the unconstitutional conditions. Plaintiffs cite numerous credible sources to scientifically support their contention - such as Texas A&M University; US Environmental Protection Agency; Centers for Disease COntrol and Prevention; Congressional Research Service; and the World Health Organization. These reputable organizations are not easily ignored and are the kind of sources from which this Court may take JUDICIAL NOTICE under Rule 201.

Plaintiffs acknowledge that 18 U.S.C. 3626(a)(1)(A) mandates that the district court must ensure that any relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation".
However Plaintiffs assert that heat index restrictions do not necessarily exceed this scope of relief if the techniques to mitigate the excessive heat prove inadequate, insufficient and not "properly available". Under such circumstances, heat index restrictions or air conditioning may be the most narrowly drawn remedy if it is the only remedy. Plaintiffs aver that the above cited sources establish that the techniques to mitigate the heat are ineffective and even dangerous.

Plaintiffs also assert that they have a high likelihood of success. For example, in Cole v. Collier, 2017 U.S. Dist. LEXIS 112095, after numerous other heat plans, the district court ordered Defendants to lower the temperature in the housing areas of heat-sensitive inmates. In Cole v. Collier, 2017 U.S. Dist. LEXIS 168703, the district court extended this 88 degree heat index restriction.

-10-

Finally in <u>Cole v. Collier</u>, 2018 U.S. Dist. LEXIS 97110, the parties reached agreement on a class settlement which required TDCJ to air condition the housing areas in which class members reside.

This case clearly shows that the remedy for which Plaintiffs seek is not expressly prohibited or unavailable. Texas is unequivocally a hot state and the climate in Navacota, Texas (where Pack Unit is located) is not unique in its ability to reach excessive temperatures in the summer. Therefore, logic dictates, that the unconstitutional conditions within the Pack Unit that required heat index restriction and air conditioning to remedy such, are substantially similar to the conditions of units throughout Texas. Like conditions require a like remedy.

Based upon the "Local Climatological Data" provided by the National Centers for Environmental Information (an arm of the National Oceanic and Atmospheric Administration) it is evident that the heat index outside the Pack Unit often exceeds 88°F for prolonged periods of time during the summer months - hence the need for air conditioning. The same is true for Robertson, Allred, Boyd, Connally, Estelle, Lynaugh, McConnell, Mountain View, Polunsky, Telford Units - etc... Since they too are subject to the same heat conditions as Pack Unit. This is verifiable by viewing:

**www.ncdc.noaa.gov/cdo-web/datasets/LCD/stations/...**

The heat index can be calculated from this data by using the National Weather Service Online Calculator at:

**www.wpc.ncep.noaa.gov/html/heatindex.shtml**

Plaintiffs aver that said information is not subject to reasonable dispute and is also subject to judicial notice under Rule 201.

Therefore, Defendants argument that this suit would likely fail is unfounded.

B. <u>LIKELINESS OF CLASS ACTION</u>

Again, although it is questionable as to how this relates to venue, Defendants argue that: "Nor does it seem likely that they can certify a statewide class relying on their experiences at Robertson Unit and general allegations of understaffing at TDCJ" (Doc. 20, pg. 10).

-11-

As explained prior, the climate in Navasota, Texas (where Pack Unit is located) is not unique in its ability to reach excessive temperatures. The "Local Climatological Data" provided by the National Centers for Environmental Information) shows that the climate conditions that lead to TDCJ air conditioning Pack Unit are substantially similar to the conditions of units throughout Texas.

Plaintiffs need not rely on their experiences at Robertson Unit to establish that the excessive heat conditions are systemic throughout the 70 TDCJ units that are not fully air conditioned.

The same is true regarding the inadequate heat mitigation - irrespective of which unit a TDCJ resident is located, fans can "increase the circulation of hot air leading to increased sweat evaporation which can speed the onset of heat-attributable conditions such as heat exhaustion" See, EPA. 2016. "Excessive Heat Events Guidebook" <https://www.epa.gov/sites/default/files/2016-03/documents/eheguide_final.pdf> (Doc. 1, ¶ 61)

This is why fans can become dangerous when the temperature is more than 95°F. So again, Plaintiffs need not rely on their experiences at Robertson Unit to establish that the mitigation techniques on all 70 unit is inadequate and unsafe.

Since NOAA, CDC, WHO, EPA etc. are all sources of information that is reliable and not subject to reasonable dispute, it is likely Plaintiffs (when given the opportunity) can establish the requirements of Fed. R. Civ. P. 23 in order to certify a statewide class on this matter.

Regardless, Plaintiffs do not see any reason why this supports the contention that the venue should be re-transferred back to Abilene Division.

V.
DEFERENCE

A. DEFERENCE TO JUDGE CUMMINGS DISCRETION

District Judges do not tend to consider motions in a vacuum - especially experienced judges such as the Hon. Sam Cummings (Abilene Division).

Even presuming (for arguments sake) Plaintiffs Advisory contained information that was "incorrect" on a technical basis about the residence of TBCJ board members, Judge Cummings is experienced enough to weigh the

relevant private and public factors in determining whether to transfer venue to Austin Division. It is extremely unlikely that Judge Cummings relied solely upon the information in the Advisory, but also applied his personal knowledge about civil prisoner litigation.

There is no evidence to suggest that Judge Cummings abused his discretion when he transferred this suit to Austin Division, and as such, this Court should defer to his discretion.

B. <u>DEFERENCE TO PLAINTIFFS CHOICE OF VENUE</u>

Ordinarily the Plaintiffs choice of venue is entitled to deference. See, <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235 (1981) [HELD: "There is ordinarily a strong presumption in the Plaintiffs choice of forum"]; <u>Delta Brands v. Danieli</u>, 99 Fed. Appx 1 (5th Cir. 2004) [SAME]; <u>Schexnider v. McDermott Int'l</u>, 817 F.2d 1159 (5th Cir. 1987) [HELD: "Unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed"].

Plaintiffs choice of venue is the Western District of Texas, Austin Division since this is the venue with jurisdiction when Plaintiffs served the Defendants. This choice of venue is entitled to deference, and when the transferee forum is no more convenient than the chosen forum, the Plaintiffs choice should not be disturbed. <u>In re Volkswagen of Am. Inc.</u>, 506 F.3d 376 (5th Cir. 2007).

## VI.
## LIKE CASES IN AUSTIN DIVISION

There are numerous civil cases originating in the Western District of Texas, Austin Division, where incarcerated plaintiffs outside the Austin area sued the members of the TBCJ. In all these cases, Austin was the appropriate venue. These cases include:

<u>Teixeira v. O'Daniel</u>, 2023 U.S. Dist. LEXIS 71601
    Venue: Western District of Texas, Austin Division
    Defendants: TBCJ members and executive director of TDCJ
    Plaintiff confined at: McConnell Unit, Beeville, Texas

<u>Dunham v. Wainwright</u>, 2017 U.S. Dist. LEXIS 19746
    Venue: Western District of Texas, Austin Division
    Defendants: TBCJ members
    Plaintiff confined at: McConnell Unit, Beeville, Texas

Crosby v. Collier, 2011 U.S. Dist. LEXIS 65788
    Venue: Western District of Texas, Austin Division
    Defendants: TBCJ members and executive director of TDCJ
    Plaintiff confined at: Telford Unit, New Boston, Texas

Duenes v. Wainwright, 2017 U.S. Dist. LEXIS 202093
    Venue: Western District of Texas, Austin Division
    Defendants: includes chairperson of TBCJ and executive director of TDCJ
    Plaintiff confined at: Boyd Unit, Teague, Texas

Johnson v. TBCJ, 2004 U.S. Dist. LEXIS 33181
    Venue: Western District of Texas, Austin Division
    Defendants: TBCJ
    Plaintiff confined at: Smith Unit, Amarillo, Texas

Moffett v. Collier, 2011 U.S. Dist. LEXIS 59223
    Venue: Western District of Texas, Austin Division
    Defendants: TBCJ members and director of TDCJ
    Plaintiff confined at: Telford Unit, New Boston, Texas

To drive the point home, the following cases are from incarcerated plaintiffs assigned to the Robertson Unit, Abilene, whom have filed suit against Texas officials in the Western District of Texas, Austin Division:

Sossamon v. Lone Star State of Texas, 2011 U.S. Dist. LEXIS 166105
    Venue: Western District of Texas, Austin Division
    Defendants: included TBCJ and executive director of TDCJ
    Plaintiff confined at: Robertson Unit, Abilene, Texas
        NOTE: Unlike the suit at hand, Sossamon also included the Senior Warden of the Robertson Unit as a Defendant and the events giving rise to the suit (use of the Robertson Unit Chapel) was specific to Robertson Unit.

Martinez v. Abbott, 2017 U.S. Dist. LEXIS 114478
    Venue: Western District of Texas, Austin Division
    Defendants: Texas Board of Pardons and Parole, Austin, Texas
    Plaintiff confined at: Robertson Unit, Abilene
        NOTE: Parole hearing conducted on Robertson Unit.

Gowan v. Keller, 2010 U.S. Dist. LEXIS 99195
    Venue: Western District of Texas, Austin Division
    Defendants: Texas Court of Criminal Appeals, Austin, Texas
    Plaintiff confined at: Robertson Unit, Abilene, Texas

Hernandez v. Keller, 2007 U.S. Dist. LEXIS 93103
    Venue: Western District of Texas, Austin Division
    Defendants: Texas Court of Criminal Appeals and director of Classification and Records for TDCJ
    Plaintiff confined at: Robertson Unit, Abilene, Texas

If the Defendants arguments were meritorious, then all the above civil cases were adjudicated in an inappropriate venue.

Of course, Plaintiffs disagree with the Defendants argument and point out that if the District Judges presiding over these cases believed Austin Division was not the correct venue to sue the TBCJ or other Texas officials, they would have transferred the case to a more appropriate and convenient venue - but they did not.

VII.
REASON FOR NO CERTIFICATE OF SERVE ON ADVISORY

In numerous parts of their motion, Defendants point out that "Plaintiffs did not include a Certificate of Service to Defendants" (Doc. 20, pg. 3) when they submitted their Advisory (Doc. 9) to the Abilene Division.

This is true. Plaintiffs did not serve Defendants with a copy of said Advisory. This is because Defendants had not yet been served the Summons or Original Complaint and thus were not yet parties to the suit.

Plaintiffs argue that because they did not actually provide incorrect information nor conclusory allegations in their Advisory, it is irrelevant whether or not Defendants received a copy as their arguments are not meritorious and would not have changed the outcome. The Hon. Cummings would have, in his broad discretion, still transferred this suit to Austin Division as the appropriate and more convenient venue.

VIII.
CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiffs assert that Defendants have failed to show good cause to justify reconsideration and warrant a transfer of venue.

Plaintiffs respectfully pray that this Court DENY Defendants Motion to Transfer Venue (Doc. 20) and retain jurisdiction over this suit as the most appropriate and convenient venue pursuant to 28 U.S.C. 1391(2) and 1404(a).

Plaintiffs additionally pray for such other and further relief to which they may show themselves to be justly entitled.

Respectfully Submitted,

_____
Matthew Baker #2227525
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
Timothy Cone #1688760
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
James Elmore #2273850
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
William Oliver #2290434
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
Dannie Carter #2013581
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
Robert Andrews #2214727
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
Allen Kerns #2303607
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
Adam Thomas #2254371
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
Seth Batterton #2154923
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____
Juan Martinez #2017980
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

**12th May 2023**

CERTIFICATE OF SERVICE

The undersigned Plaintiffs hereby certify that a true and correct copy of the foregoing has been served via First Class USPS to Counsel representing the Defendants on this the 12th May 2023

Certified Mail No. 7021 1970 0001 2988 5891

VERIFICATION

The undersigned Plaintiffs hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and, as to those, they are believed to be true. The undersigned certify under penalty of perjury that the foregoing is true and correct.

Executed at Abilene, Texas on this the 12th May 2023

_____
Matthew Baker

_____
Robert Andrews

_____
Timothy Cone

_____
Allen Kerns

_____
James Elmore

_____
Adam Thomas

_____
William Oliver

_____
Seth Batterton

_____
Dannie Carter

_____
Juan Martinez

Matthew Baker #2227525
Robertson Unit
12071 FM 3522
Abilene, TX 79601

7021 1970 0001 2988 5

United States District Court
Western District of Texas
501 West 5th Street, Ste. 1100
Austin, Texas 78701

SCREENED BY
MAY 17 2023

USPS ABILENE TX 79601 MAY 15 2023