FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MAY 17 2023

CLERK U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY CLERK

MATTHEW BAKER, et al.,        §
              Plaintiffs,     §
                             §
V.                           §        Cause No. 1:22-CV-01249-RP-DH
                             §
BRYAN COLLIER, et al.,        §
              Defendants.     §
                             §

**PLAINTIFFS' RESPONSE TO
DEFENDANTS MOTION TO DISMISS**

TO THE HONORABLE COURT:

NOW COMES, the Undersigned Plaintiffs, acting Pro Se in the above styled and numbered cause and respectfully file Plaintiffs' Response to Defendants Motion To Dismiss.

Plaintiffs pray that this Court DENY said Motion. In support thereof, Plaintiffs show the following:

I.
SUBJECT MATTER JURISDICTION

A. <u>STANDARD OF REVIEW</u>

Fed. R. Civ. P. 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction "when [it] lacks the statutory or constitutional power to adjudicate the case" <u>Home Builders Ass'n of Miss., Inc. v. City of Madison</u>, 143 F.3d 1006, 1010 (5th Cir. 1998).

The party asserting jurisdiction has the burden of proof on a Rule 12(b)(1) motion to dismiss, and the motion "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief" <u>Ramming v. U.S.</u>, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding a Rule 12(b)(1) motion, the Court may consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the Court's resolution of disputed facts. <u>Stratta v. Roe</u>, 961 F.3d 340 (5th Cir. 2020).

-1-

## B. INDIVIDUAL CAPACITY CLAIMS FOR ALL DEFENDANTS

Plaintiffs do not seek punitive damages – only injunctive and declaratory relief.

As such, Plaintiffs concede that injunctive and declaratory relief under §1983 is only available against parties in their official capacity. Plaintiffs therefore voluntarily abandon the claims against all Defendants in their individual capacities, and proceed with the claims against all Defendants in their official capacity.

## C. BOARD MEMBERS IN THEIR OFFICIAL CAPACITY

Defendants present a challenge pursuant to Rule 12(b)(1) and allege that this Court lacks standing against the Board members because "Plaintiffs have failed to plead factual allegations that the Board Members had any personal involvement in the promulgation or enforcement of TDCJ's heat mitigation policies" and thus "do not tie alleged constitutional violation to direct actions of the Board Members" (Doc. 21, pg. 6).

To support their argument, the Defendants claim that AD-10.64 (the heat mitigation policy) is an Administrative Directive, not a Board Policy, and that the "Board has limited authority to review policy" and that the "Boards responsibilities do not include development or enforcement of TDCJ heat mitigation policy" (Doc. 21, pg. 5).

Plaintiffs assert that they have sufficiently plead a causal connection between the conduct of the Board Members and the continuing unconstitutional heat conditions in order to survive a challenge under Rule 12(b)(1).

## i. AD-10.64 IS NOT CAUSAL NEXUS

Firstly, this suit is NOT about AD-10.64 per se, so Plaintiffs need not show "that the Board Members had any personal involvement in the promulgation or enforcement of TDCJ's heat mitigation policies".

Instead this suit is about the excessive heat conditions throughout TDCJ that violate the Eighth Amendment. The causal nexus between the conduct of the Board members and the constitutional violation is the policy or practice that does not require the regulation of high indoor heat index temperatures in the housing and work areas – this policy is directly responsible for the actual conditions.

AD-10.64, and its subsequent heat mitigation techniques, only come into the equation to the extent that such techniques are ineffective to reduce the risk of serious harm to constitutionally permissible levels. The ineffectiveness of AD-10.64 does not cause the actual excessive heat conditions. This is because the conditions are the result of having no regulation of indoor temperatures.

As is shown in the Original Complaint (Doc. 1), Plaintiffs state:

> All residents who currently are, or in the future will be, incarcerated at the 70 units of TDCJ that are not fully air-conditioned, and thus subjected to **TDCJ's policy and practice** of **failing to regulate high indoor heat index temperatures in the housing and work areas,** are exposed to conditions that are cruel and unusual in violation of the Eighth Amendment to the United States Constitution.
>
> (Doc. 1, ¶121)

As is clear, Plaintiffs sufficiently plead that the "policy and practice of failing to regulate high indoor heat index temperatures" is the cause of the unconstitutional heat conditions, and, since the TBCJ is the final policy maker of TDCJ, the TBCJ are directly responsible for this policy and practice.

ii. TBCJ IS FINAL POLICYMAKER

The Original Complaint states that each TBCJ Board Member is "legally responsible for the creation of policy for the Texas Department of Criminal Justice" (Doc. 1, ¶ 16-24).

This is supported by Tex. Gov. Code 492.001 which states: "The Board governs the department". In other words, the TBCJ governs the TDCJ. Therefore, the Board does not have the "limited authority to review policy" as Defendants claim. This is also evident from Tex. Gov. Code 492.013 which describes the general powers and duties of the TBCJ.

492.013(e) states: "The board shall develop and implement policies that clearly separate the **policymaking responsibilities of the board** and the **management responsibilities of the executive director** and the staff of the department".

Therefore, TBCJ has the statutory "policymaking responsibilities" and the executive director only has "management responsibilities". This statute also mandates that these responsibilities SHALL be clearly separate.

-3-

### iii. POLICY AND PRACTICE

"Official Policy" does not only include written policy, ordinances, regulation, or directives, but extends to include persistent, widespread practices of officials which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents policy. Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984); Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992).

Plaintiffs assert that the "Official Policy" of the TBCJ is that they do not require the regulation of high indoor heat index temperatures in the housing and work areas. It is this policy that causes the unconstitutional heat conditions in TDCJ. Since the TBCJ is statutorily the final policymaker, and policymaking responsibilities shall be clearly separate from management responsibilities, TBCJ is clearly the origin of said policy.

### iv. RESPONDEAT SUPERIOR / SUPERVISOR LIABILITY

Defendants also advance an argument under "respondeat superior". Defendants argue that "Plaintiffs may not extend liability to the Board members for TDCJ Executives actions because a plaintiff may not establish Section 1983 liability under the theories of respondeat superior or vicarious liability" (Doc. 21, pg. 6).

The Fifth Circuit explains that under §1983 "supervisory officials are not liable for the actions of subordinates on any type of vicarious liability. A supervisor may be liable if he is personally involved in the constitutional violation or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation". Bey v. Dominguez, 2022 U.S. App. LEXIS 35813; Thompkins v. Belt, 828 F.2d 298, 304-305 (5th Cir. 1987).

As Plaintiffs have already shown, there is a sufficient causal connection between the TBCJ policy of not requiring the regulation of high indoor heat index temperatures in order to show that TBCJ is responsible for the violation of the Plaintiffs rights.

D. <u>DELIBERATE INDIFFERENCE</u>

i. <u>STANDARD OF REVIEW</u>

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. See, <u>Helling v. McKinney</u>, 113 S.Ct. 2475 (1993).

In a constitutional claim alleging deliberate indifference to the conditions of a prisoner's confinement, the plaintiff must satisfy the "subjective and objective requirements" of the Eighth Amendment inquiry. <u>Farmer v. Brennan</u>, 114 S.Ct. 1970 (1994).

To satisfy the objective requirement, the plaintiff must show an "objectively intolerable risk of harm" Id.

To satisfy the subjective requirement, the plaintiff must show that the defendant:

   1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;

   2) subjectively drew the inference that the risk existed; and,

   3) disregarded the risk.

See, <u>Cleveland v. Bell</u>, 938 F.3d 672, 676 (5th Cir. 2019)

ii. <u>ADDRESSING MISCHARACTERIZATIONS</u>

Defendants present a challenge pursuant to Rule 12(b)(1) and argue that "Plaintiffs' allegations are insufficient to establish deliberate indifference by Defendants" and that they "fail to plead facts that indicate Defendants are aware of a substantial risk of serious harm to inmates due to inefficacy of heat mitigation measures on a state-wide level" (Doc. 21, pg. 8).

There are a number of mischaracterizations that must be addressed prior to the deliberate indifference analysis.

Firstly, Defendants incorrectly state that: "Plaintiffs admit that the heat mitigation measures and various notices 'mitigate the result of exposure to extreme heat', but instead they seek air conditioning to prevent

the conditions of extreme heat... Plaintiffs' allegations indicate that TDCJ has taken affirmative steps to mitigate extreme temperatures" (Doc. 21, pg. 8)

Plaintiffs have made it abundantly clear that although TDCJ has heat mitigation measures, those measures are inadequate, ineffective and unsafe. The Original Complaint clearly states [in the paragraph directly after the one partially cited by Defendants] "that the heat mitigation policies of TDCJ (even after decades of trial and error) cannot actually deliver sufficient or effectual protection from the conditions that cause exposure to extreme heat" (Doc. 1, ¶ 92). It could be no clearer.

Secondly, Defendants state: "Plaintiffs may not contend that the Defendants or TDCJ acted deliberately indifferent in applying unsatisfactory techniques" (Doc. 21, pg. 9).

Plaintiffs do not allege "unsatisfactory techniques" but insufficient, inadequate and unsafe techniques that do not reduce the heat conditions to a constitutionally acceptable level. Plaintiffs do NOT seek air conditioning as a remedy to the unconstitutional conditions because they are uncomfortable or not to Plaintiffs satisfactions – but because the excessive heat conditions pose a substantial threat of serious harm or death, and air conditioning is the only remedy in light of the inadequate heat mitigation techniques.

iii. <u>OBJECTIVE REQUIREMENT</u>

The Fifth Circuit precedent clearly establish that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures. <u>Yates v. Collier</u>, 868 F.3d 354 (5th Cir. 2017); <u>Hinojosa v. Livingston</u>, 807 F.3d 657, 667 (5th Cir. 2015).

Plaintiffs have alleged sufficient facts to establish that it "is common knowledge that Texas is a state prone to extreme temperatures and drought" (Doc. 1, ¶34)` and that "throughout the history of imprisonment in Texas, incarcerated residents have experienced great harm from extreme heat" (Doc. 1, ¶41)

Plaintiffs also dedicated a large portion of the Original Complaint to establish that the mitigation techniques employed by TDCJ are inadequate, insufficient and unsafe. (See, Doc. 1, ¶ 57–93). Plaintiffs have meet the objective requirement.

iv. <u>SUBJECTIVE REQUIREMENT</u>

There has been a long saga of challenges to conditions of confinement in the Fifth Circuit in regards to unconstitutional heat conditions in prisons.

In light of these precedents, a prison official acts unreasonably when they, either directly or through their policy, subjects the inmates in their care to extremely dangerous temperatures without adequate remedial measures in conscious disregard of the risk posed by those temperatures.

Common sense dictates that the excessive heat conditions in TDCJ are not so isolated or obscure to escape the personal knowledge of the Board Members or TDCJ officials. In fact, in their Motion the Defendants concede that:

> It is worth noting that the trial court in <u>Yates</u> found the techniques [of heat mitigation] inadequate as <u>applied</u> in practice after receiving evidence on conditions at the Wallace Pack Unit and no other Texas prisons. (Doc. 21, pg. 9).

In a single breath, Defendants admit that they know that their heat mitigation is "inadequate", but attempt to distinguish Pack Unit from the remaining 70 units in TDCJ that do not have air conditioning.

But the inadequate heat mitigation techniques used on the Pack Unit are the EXACT SAME heat mitigation techniques employed on ALL TDCJ Units with no air conditioning. The Court in <u>Yates</u> did NOT hold that conditions on Pack Unit were unique to Pack Unit alone, nor that those conditions made the heat mitigation techniques inadequate. Such a contention is ridiculous. It is a distinction without a difference. The truth of the matter is that the heat mitigation techniques were inadequate to reduce the substantial risk of serious harm to a constitutionally acceptable level because they are inadequate – period. This is true irrespective of which Unit the techniques are employed.

Plaintiffs assert that the evidentiary conclusions in <u>Cole v. Livingston</u>, 2016 U.S. Dist. LEXIS 77435, based upon "copious evidence", are sufficient to give the Board Members and TDCJ officials notice that their heat mitigation techniques are inadequate, and that their policy of not regulating high indoor heat index temperatures in housing and work areas expose TDCJ residents to conditions that are cruel and unusual in violation of the Eighth Amendment.

The techniques in the current version of AD-10.64 have not changed substantially since the hearings in Cole. TDCJ still relies upon ice, fans, cold showers and so-called "respite" areas.

Furthermore, the expert authorities cited by Plaintiffs in their Original Complaint to show the inadequatacy of the heat mitigation are all public sources that are not subject to reasonable debate (To wit: A&M University; Environmental Protection Agency; Centers for Disease Control and Prevention; Bureau of Justice Statistics, etc.)

Thus the findings in <u>Cole</u> are not the sole source of notice about the inafequate heat mitigation techniques. The scientific consensus also gives such notice.

In light of the above, it is clear that Defendants have notice of facts to which an inference could be drawn about the substantial risk of serious harm that the continuing of their policy of not regulating temperatures is causing. It is apparent that Defendants have unquestionably drawn that inference and disregard the actual risk by continuing the policy.

Logic dictates that if Defendants have not disregarded the actual risk, they would have taken actions towards creating written policy requiring regulation of temperatures and the installation of some kind of measure to lower the actual indoor temperatures to safe levels.

But they have not - instead they continue to feverishly contest the arc of evolving standards to avoid providing constitutionally sufficient conditions in all TDCJ Units.

## II.
## FAILURE TO STATE A CLAIM

### A. <u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the Complaint. <u>OXY USA v. Babbitt</u>, 122 F.3d 251, 257 (5th Cir. 1997).

The Complaint must be liberally construed in favor of the Plaintiff and all facts pleaded therein must be taken as true. <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 113 S.Ct. 1160, 1161 (1993); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).

The Supreme Court has explained that a Complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged". <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).

"Determining whether a Complaint states a plausible claim for relief will... be a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense" Iqbal, at 679.

Dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Conley v. Gibson, 78 S.Ct. 99, 102 (1957).

A motion to dismiss "is viewed with disfavor and is rarely granted" Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997); Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982).

In determining whether a Plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to (1) the facts set forth in the Complaint; (2) documentation attached to the Complaint; and (3) matters of which judicial notice may be taken under Fed. R. Evid. 201. See, Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).

Because the failure to state a legal theory is not equivalent to the failure to state a claim, if the defendant desires clarification of the legal grounds for the claims asserted before filing an answer, it should have moved for a more definite statement of the claims under Rule 12(e), rather than moving for dismissal under Rule 12(b)(6).

## B. CLASS ACTION CLAIMS

### i. GENERALLY

Firstly, Plaintiffs question whether the Original Complaint's alleged failure to PROVE all the elements under Rule 23 warrants dismissal for failing to state a claim under Rule 12(b)(6). The Original Complaint need only "plead enough facts to state a claim to relief that is plausible on its face". Therefore, Plaintiffs need not PROVE facts sufficient to satisfy the requirements of Rule 23 in order to survive a challenge under Fed. R. Civ. P. 12 (b)(6).

It is also noteworthy that Defendants only dispute the elements of Rule 23(a)(2) and (4), and not the remaining predicate elements under Rule 23(a) nor the requirements of Rule 23(b). Presumably, Defendants believe Plaintiffs can easily satisfy these parts of Rule 23.

## ii. CLASS COUNSEL

Defendants move to dismiss this suit under Fed. R. Civ. P. 12(b)(6) on the grounds that "Plaintiffs fail to meet the fourth element [of Rule 23] because they proceed pro se" (Doc. 21, pg. 11) – The fourth element of of Rule 23 is that "the representative parties will fairly and adequately protect the interests of the class" Fed. R. Civ. P. 23(a)(4).

To support their argument, Defendants claim that "Plaintiffs are also not entitled to appointment of class counsel as they have not requested leave to proceed in forma pauperis, nor have they demonstrated their inability to afford filing fees" (Doc. 21, pg. 12).

As the Defendants explain it, the "Fifth Circuit has ruled that pro se plaintiffs cannot adequately represent unnamed class members... Nor does Rule 23 entitle a pro se inmate to the appointment of a class counsel" (Doc. 21, pg. 11).

This argument is disingenuous in light of the plain text of Fed. R. Civ. P. 23(g). Under this rule, "a court that certifies a class **must** appoint class counsel" and then sets out four criteria that must be considered in appointing that class counsel.

Under the plain text of Rule 23(g), Defendants assertions are wrong as the word "must" is mandatory language that creates a requirement that the court appoint class counsel upon certifying a class. Plaintiffs have no idea how Defendants concluded that Rule 23 does NOT entitle a pro se inmate to the appointment of class counsel.

Defendants also argue that the statute that permits appointment of class counsel is 28 U.S.C. 1915(e) and that because Plaintiffs have not requested leave to proceed in forma pauperis, they are not entitled to the appointment of class counsel.

Plaintiffs assert that Defendants are incorrect to rely upon 1915(e) as the basis of this Courts authority to appoint class counsel. This

statute states absolutely nothing about the appointment of class counsel and only relates to the appointment of counsel when an individual prisoner is deemed unable to afford counsel.

This statute uses discretionary language ["may request"], while Rule 23(g) uses mandatory language ["must appoint"].

### iii. COMMONALITY

Defendants also move to dismiss this suit under Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiffs allegedly "fail in demonstrating commonality under Rule 23" (Doc. 21, pg. 13).

Defendants argue that: "While Plaintiffs base their claims on the heat mitigation policies established in TDCJ Administrative Directive 10.64, the Prison Litigation Reform Act ("PLRA") would indicate the Eighth Amendment evaluation would require a unit-by-unit analysis to determine if any other measures exist before installing air conditioning. Like the typicality analysis, the commonality element would require multiple different examinations of the various prison units and therefore, would not yield a common answer" (Doc. 21, pg. 13).

Plaintiffs disagree with Defendants assertion. "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims" In re Deepwater Horizon, 739 F.3d 790, 810 (5th Cir. 2014).

As the Fifth Circuit has explained, "this contention need not relate specifically to the damages component of the class member's claims. Even an instance of injurious conduct, which would usually relate more directly to the defendant's liability than to the claimant's damages, may constitute 'the same injury'" id. See also, Cole v. Livingston, 2016 U.S. Dist. LEXIS 77435.

Defendants erroneously focus solely on the damages component and disregard the injurious conduct. Plaintiffs have clearly deomonstrated commonality with regard to certification as a class. They raise the common contentions that excessive heat constitutes a condition of confinement that poses a substantial risk of serious harm to the health of all inmates, and that TDCJ officials were deliberately indifferent to the risk posed.

-11-

iv. <u>REQUESTED REMEDIES VERSUS PRECEDENT</u>

Although Defendants admit that the "Fifth Circuit has determined that requiring units to provide air conditioning is seen as **an appropriate solution when no other sufficient remedy exists**" (Doc. 21, pg. 14), the Defendants still attempt to argue that "Plaintiffs suit requests equitable relief that contradicts established precedent" (Doc. 21, pg. 13). To support their contention the Defendants rely on the <u>Gates</u> and <u>Ball</u> line of cases.

However, the argument has been rejected that the PLRA categorically prohibits an injunction requiring all TDCJ units be air conditioned. The Fifth Circuit has explicitly rejected this argument in <u>Yates v. Collier</u>, 865 F.3d 354 (5th Cir. 2017), which states:

> Relying on our decision in <u>Ball v. LaBlanc</u>, Defendants argue that the PLRA categorically prohibits an injunction requiring that the Pack Unit be air-conditioned. This is not so.
> In <u>Ball</u> — which was not a class action case — we held that a permanent injunction requiring that a prison facility be air-conditioned was overbroad under PLRA because the evidence produced at trial showed that "there [were] many acceptable remedies short of facility-wide air conditioning" that could possibly cure the Eighth Amendment violation. In other words, <u>Ball</u> held that air conditioning was not appropriate in that case because other acceptable and less-intrusive remedies had yet to be tried — not that air-conditioning was necessarily an impermissible remedy.

Also in <u>Yates</u>, the Fifth Circuit also rejected the Defendants reliance on <u>Gates</u>:

> The Defendants also cite <u>Gates v. Cook</u>. In <u>Gates</u>, which was a class action case, the district court entered an injunction requiring that the defendants "provide fans, ice water, and daily showers when the heat index is 90 degrees or above...". Of course, just because <u>Gates</u> affirmed a different injunction on a different record does not speak to whether the Plaintiffs' requested relief in this case would be permissible under the PLRA.

It is significant to note that <u>Ball</u> deals specifically with conditions in the Louisiana Department of Corrections (Death Row) and <u>Gates</u> dealt with conditions in the Mississippi Department of Corrections.

Neither deal with excessive heat conditions in the TDCJ nor address the adequacy of the TDCJ heat mitigation techniques. So neither <u>Ball</u> or <u>Gates</u> is dispositive of whether air conditioning is indeed the least intrusive means of correcting the Eighth Amendment violation caused by the excessive heat conditions in the TDCJ.

However, <u>Cole v. Livingston</u>, 2016 U.S. Dist. LEXIS 77435, DID evaluate TDCJ's policy and found, based on expert testimony and "copious evidence of the effects that such high temperatures have", that TDCJ's heat mitigation measures (more frequent showers, cold drinking water, fans, and temporary access to air conditioned "respite areas") were INEFFECTIVE to reduce the risk of serious harm to a constitutionally permissible level for any resident, including healthy ones. See also, <u>Yates v. Collier</u>, 868 F.3d 354 (5th Cir. 2017). As a result, TDCJ eventually settled and agreed to install air conditioning on Pack Unit. 2018 U.S. Dist. LEXIS 97110.

<u>Cole</u> clearly shows that the remedy for which Plaintiffs seek is not expressly prohibited by precedent. Air conditioning does not necessarily exceed the "narrowly drawn" scope of relief pursuant to 18 U.S.C. 3626(a)(1)(A) if the techniques to mitigate the excessive heat prove ineffective. Under such circumstances, heat index restrictions or air conditioning may be the most narrowly drawn remedy if it is the only remedy.

Texas is unequivocally a hot state and the climate in Navasota, Texas (where Pack Unit is located) is not unique in its ability to reach excessive temperatures. Therefore, logic dictates that the unconstitutional conditions for which the heat mitigation techniques proved ineffective on Pack Unit are substantially similar to the conditions of units throughout Texas.

Based upon the "Local Climatological Date" provided by the National Centers for Environmental Information (an arm of the National Oceanic And Atmospheric Administration) it is evident that the heat index outside the Pack Unit often exceeds 88°F for prolonged periods of time during the summer months – hence the need for air conditioning.

The Same is True for Robertson, Allred, Boyd, Connally, Estelle, Lynaugh, McConnell, Mountain View, Polunsky, Telford units – etc... since they too are subjected to the same heat conditions as Pack Unit. This is verifiable by viewing:

**www.ncdc.noaa.gov/cdo-web/datasets/LCF/stations/...**

The heat index can be calculated from this data by using the National Weather Service Online Calculator at:

**www.wpc.ncep.noaa.gov/html/heatindex.shtml**

This information from the NOAA is not subject to reasonable dispute and Plaintiffs request this Court take JUDICIAL NOTICE of said data under Fed. R. Evid. 201.

All TDCJ residents on all 70 units without air conditioning listed in the Original Complaint (Doc. 1, ¶ 43-44), regardless of age or health, are subjected to the SAME policy on climate control (i.e. their housing and work areas are not air conditioned), all have the SAME ineffective heat mitigation measures available to them, and all are harmed in essentially the SAME way - i.e. by exposure to a substantial risk of serious harm because of exposure to excessive heat.

Therefore, air conditioning is an appropriate solution under precedent because no other sufficient remedy exists. Defendants motion to dismiss should be denied.

### III.
### ADDRESSED FOR CLARITY

There are a number of statements made by Defendants in their motion that, while arguably immaterial to the merits of their motion, need to be addressed for clarity.

Defendants state: "Here, Plaintiffs seek to have climate control installed in all Texas prisons because they allege the current heat mitigation techniques violate the Eighth Amendment" (Doc. 21, pg. 7). Defendants also state: "Here, Plaintiffs fail to state an Eighth Amendment violation because they fail to show that TDCJ's heat mitigation techniques measures are per se unconstitutional" (Doc. 21, pg. 14).

For clarity, Plaintiffs did NOT allege that the heat mitigation techniques violate the Eighth Amendment. Instead, Plaintiffs actually allege that the excessive heat conditions throughout TDCJ violate the Eight Amendment and that the heat mitigation techniques are inadequate & ineffective to reduce the risk of serious harm to constitutionally permissible levels for any inmate, including healthy ones.

Defendants also erroneously state: "As Plaintiffs admit and the Courts have recognized, TDCJ's heat mitigation measures of providing ice water, fans, access to cool showers, and respite areas are adequate remedies

to mitigate extreme temperatures" (Doc. 21, pg. 14).

This is incorrect - Plaintiffs have not, and do not, admit that TDCJ's heat mitigation measures are adequate. Plaintiffs actually allege that they are inadequate, and this contention is supported by the evidentiary findings of Cole v. Livingston, 2016 U.S. Dist. LEXIS 77435.

Lastly, Defendants argue that: "the Plaintiffs cite Dr. Vassallo's testimony supporting their claims that the mitigation techniques fail to prevent heat sickness. However, Dr. Vassallo has also previously testified that other heat mitigation techniques exist that are less invasive than facility wide air conditioning" (Doc. 21, pg. 15). To support this, Defendants cite Ball v. LeBlanc, 792 F.3d 584 (5th Cir. 2015).

This case ACTUALLY states: "Here Plaintiffs' own expert, Dr. Vassallo, explained that there are many acceptable remedies short of facility wide air conditioning. For example, the Defendants could divert cool air from the guards' pod into the tiers; allow inmates to access air conditioned areas during their tier time" id at 599.

Unlike what Defendants suggest, Dr. Vassallo's testimony recommended alternative measures that involved lowering the temperature. This case also did not require facility wide air conditioning because it was not a class action and only concerned three inmates on death row. It did not extend to the remaining inmates at the facility in Louisiana. Hence there was no need to air condition the entire facility.

## IV.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiffs assert that Defendants have failed to show entitlement to dismissal pursuant to Rule 12(b)(1) and (6).

Plaintiffs respectfully pray that this Court DENY Defendants motion to dismiss (Doc. 21). Plaintiffs additionally pray for such other and further relief to which they show themselves to be justly entitled.

**12th May 2023**

<NLG-PC[SAJZ]>

Respectfully Submitted,

Matthew Baker #2227525
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

Robert Andrews #2214727
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

Timothy Cone #1688760
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

Allen Kerns #2303607
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

James Elmore #2273850
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

Adam Thomas #2254371
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

William Oliver #2290434
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

Seth Batterton #2154923
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

Dannie Carter #2013581
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

Juan Martinez #2017980
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

CERTIFICATE OF SERVICE

The undersigned Plaintiffs hereby certify that a true and correct copy of the foregoing has been served via First Class USPS to Counsel representing the Defendants on this the 12ᵗʰ May 2023
Certified Mail No. 7021 1970 0001 2988 5891

VERIFICATION

The undersigned Plaintiffs hereby verify that teh matters alleged herein are true, except as to matters alleged on information and belief, and, as to those, they are believed to be true. The undersigned certify under penalty of perjury that the foregoing is true and correct.

EXECUTED at Abilene, Texas on this the 12ᵗʰ May 2023

Matthew Baker

Timothy Cone

James Elmore

William Oliver

Dannie Carter

Robert Andrews

Allen Kerns

Adam Thomas

Seth Batterton

Juan Martinez

-17-